# United States Court of Appeals
## For the First Circuit

---

No. 22-1272

JOSE MAURICIO FIGUEROA,

Petitioner,

v.

MERRICK B. GARLAND, Attorney General,

Respondent.

---

PETITION FOR REVIEW OF AN ORDER OF
THE BOARD OF IMMIGRATION APPEALS

---

Before

Barron, Chief Judge,
Howard and Gelpí, Circuit Judges.

---

Robert M. Warren for petitioner.

Timothy Bo Stanton, Trial Attorney, Office of Immigration Litigation, Civil Division, U.S. Department of Justice, with whom Brian M. Boynton, Principal Deputy Assistant Attorney General, Civil Division, and Anthony P. Nicastro, Assistant Director, Office of Immigration Litigation, were on brief, for respondent.

Cody Wofsy, Hannah Schoen, Lee Gelernt, Matthew R. Segal, Adriana Lafaille, Gilles Bissonnette, and SangYeob Kim, were on brief for the American Civil Liberties Union Foundation, American Civil Liberties Union of New Hampshire, and American Civil Liberties Union of Massachusetts, amici curiae.

October 17, 2024

**HOWARD**, <u>Circuit Judge</u>.  Jose Mauricio Figueroa, a native and citizen of El Salvador, petitions for review of the denial of his application for special rule cancellation of removal under the Nicaraguan Adjustment and Central American Relief Act (NACARA). Specifically, Figueroa takes issue with the agency's determination that he was ineligible for this discretionary form of relief because he failed to establish that his removal would result in "exceptional and extremely unusual hardship" to himself or his spouse Maria.  For the reasons explained below, we deny the petition.

**I.**

**A.**

The Department of Homeland Security (DHS) commenced the underlying removal proceedings against Figueroa in 2007.  The relevant procedural history for our purposes, however, began in March 2018, when Figueroa appeared in front of an immigration judge (IJ) seeking special rule cancellation of removal under NACARA.

"Enacted in 1997, NACARA amended certain provisions of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA) permitting [certain] aliens from particular countries, including [El Salvador], to seek discretionary relief under prior, more generous statutory standards."  <u>Gonzalez-Ruano</u> v. <u>Holder</u>, 662 F.3d 59, 60 (1st Cir. 2011).  Figueroa and DHS agreed that a heightened NACARA standard applied to Figueroa based

on his criminal history.  Under that standard, Figueroa could establish eligibility for special rule cancellation of removal by showing: (1) a ten-year period of continuous physical presence in the United States; (2) good moral character during that period; and (3) that his removal would result in "exceptional and extremely unusual hardship" to Figueroa or a qualifying relative.[1]  Pub. L. No. 105-100, § 203, 111 Stat. 2160, 2198-99 (1997); 8 C.F.R. § 1240.66(c).  In addition to eligibility, Figueroa was also required to show that discretion should be exercised to grant him relief.  See 111 Stat. at 2198; 8 C.F.R. § 1240.64(a).

Figueroa and DHS stipulated that Figueroa had satisfied the necessary period of continuous presence.  The remaining requirements were all contested at the hearing.  Figueroa offered his own testimony and that of Maria and his daughter, as well as affidavits from two of his other children and several letters of support from friends and coworkers.

The IJ denied Figueroa's application in a written order issued in May 2019.  The IJ described how Figueroa has lived in the United States for thirty years with Maria, who has lawful status.  The IJ went on to find that Figueroa has worked during that time and that the couple owns two properties for which Figueroa manages the finances.  The IJ also recognized that Maria

---

[1] We will occasionally refer to this final eligibility requirement as "the hardship standard."

works, has health insurance, and plans to retire in a few years.

The IJ acknowledged that Figueroa's removal would pose an emotional and economic hardship to Maria. Specifically, the IJ noted that the "love is still there" despite Figueroa being arrested on three occasions for indecent assault and battery.[2] The IJ also found that Maria had previously managed to pay her bills when Figueroa was out of work for six months by relying on her own income, income generated by their properties, and help from her family.

The IJ further acknowledged that Figueroa's removal would pose a hardship to Figueroa personally. The IJ noted that Figueroa takes daily medication for high blood pressure, high cholesterol, and heart problems, and that he claimed he would have difficulty getting medical care in El Salvador. The IJ also took note of the fact that Figueroa claimed he would be unable to find work or housing in El Salvador and that his cousin had been killed within three months of being removed from the United States to El Salvador in 2017. The IJ did not make a credibility finding with respect to Figueroa.

In the end, the IJ concluded that, although a "close call," Figueroa had not met his burden of establishing exceptional

---

[2] The arrests, which took place in 1997, 2003, and 2013, all involved allegations that Figueroa touched a woman on the breast or thigh while he was on the street or public transportation.

and extremely unusual hardship to himself or Maria.[3]  The IJ also held that, even if eligible for special rule cancellation of removal, Figueroa did not merit a favorable exercise of discretion because he "refus[ed] to take responsibility" for his repeated arrests for indecent assault and battery.  The IJ did not reach the issue of whether Figueroa had established the requisite good moral character.

Figueroa sought review with the Board of Immigration Appeals (BIA), who dismissed his appeal with a written order issued in March 2022.  Citing several of its published decisions regarding the hardship standard, see In re Monreal-Aguinaga, 23 I. & N. Dec. 56 (B.I.A. 2001); In re Andazola-Rivas, 23 I. & N. Dec. 319 (B.I.A. 2002); In re Gonzalez Recinas, 23 I. & N. Dec. 467 (B.I.A. 2002), the BIA concluded that the IJ had correctly applied the standard.  With respect to financial hardship, the BIA explained that Figueroa "has not met his burden of proving he and his wife would be unable to secure employment or provide for their own basic needs after [Figueroa] returns to El Salvador."  And while the BIA deemed itself "sympathetic" to Figueroa's concerns for his safety, it reasoned that "the possibility of crime in El Salvador [does not] meet[] or exceed[] the exceptional and extremely unusual hardship

---

[3] All of Figueroa's children have legal status but are adults and therefore are no longer qualifying relatives for the purpose of special rule cancellation of removal under NACARA.

standard." Having found that Figueroa was ineligible for special rule cancellation of removal, the BIA declined to reach Figueroa's challenge to the IJ's alternative determination that he was not entitled to a favorable exercise of discretion.

**B.**

Figueroa timely petitioned this court for review. The government initially claimed that we did not have jurisdiction to hear Figueroa's case, arguing that 8 U.S.C. § 1252(a)(2)(B)(i) precludes judicial review in this context. Appearing as amicus, the American Civil Liberties Union also addressed the jurisdictional issue, filing a brief joined by two of its state-level affiliates that contested the government's claim and that also asked us to clarify our precedents in this area. We subsequently stayed the case in light of the Supreme Court's grant of certiorari in Wilkinson v. Att'y Gen., No. 21-3166, 2022 WL 4298337 (3d Cir. Sept. 19, 2022), cert. granted sub nom. Wilkinson v. Garland, 143 S. Ct. 2687 (2023), rev'd in part, vacated in part, 601 U.S. 209 (2024). Wilkinson now having been decided, this case is ready for resolution.

**II.**

We start with the scope of our inquiry and our jurisdiction to undertake it.

**A.**

"Congress has sharply circumscribed judicial review of

the discretionary-relief process." Patel v. Garland, 596 U.S. 328, 332 (2022). Specifically, Congress enacted in 1996 as part of IIRIRA a provision that is now codified at 8 U.S.C. § 1252(a)(2)(B). See Pub. L. No. 104-208, Div. C, § 306, 110 Stat. 3009, 3009-607 (1996). That provision strips courts of jurisdiction to review any "judgment," "decision," or "action" regarding the denial of discretionary relief, with an exception for asylum determinations.[4] See Gonzalez-Ruano, 662 F.3d at 63 (explaining that special rule cancellation of removal under NACARA is subject to § 1252(a)(2)(B)).

But "[t]his bar has an important qualification." Patel, 596 U.S. at 333. Namely, in response to the Supreme Court's decision in INS v. St. Cyr, 533 U.S. 289 (2001), Congress approved a provision that is now codified at § 1252(a)(2)(D), which restores the jurisdiction of courts to consider "constitutional claims or questions of law." See Guerrero-Lasprilla v. Barr, 589 U.S. 221, 231-33 (2020) (discussing this history).

For some time, interpretation of this statutory scheme largely rested with the lower courts,[5] leaving "unresolved" "many

---

[4] IIRIRA also included a similar bar to judicial review of final orders of removal against noncitizens who are removable by reason of having committed certain criminal offenses. 110 Stat. at 3009-607 to -608. That provision is codified at 8 U.S.C. § 1252(a)(2)(C). See Nasrallah v. Barr, 590 U.S. 573, 576 (2020).

[5] The primary exception was Kucana v. Holder, 558 U.S. 233 (2010), in which the Supreme Court "held that § 1252(a)(2)(B) 'barred court review of discretionary decisions only when Congress

questions surrounding the procedure for judicial review provided in [§ 1252]."  14A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 3664 (4th ed. 2013).  In recent years, however, the Supreme Court has on multiple occasions turned its attention to the jurisdictional provisions of § 1252(a)(2).  Two of those decisions are particularly salient for our purposes.

First, in Patel, the Supreme Court held that "questions of fact underlying denials of discretionary relief are unreviewable under both § 1252(a)(2)(B)(i) and § 1252(a)(2)(D)."  Wilkinson, 601 U.S. at 219 (citing Patel, 596 U.S. at 343, 347).  The noncitizen in the case was seeking discretionary adjustment of status under § 1255(i).  Patel, 596 U.S. at 333–34.  The Court's holding meant that he would not be able to obtain judicial review of an IJ's determination that his testimony was not credible.  Id. at 335, 339.  This was so even though that credibility determination accordingly led the IJ to conclude that the noncitizen was ineligible for relief.  Id. at 335.

Then, in Wilkinson, the Supreme Court held that "[t]he application of a statutory legal standard (like the exceptional and extremely unusual hardship standard) to an established set of

---

itself set out the Attorney General's discretionary authority in the statute.'"  Valerio-Ramirez v. Sessions, 882 F.3d 289, 293 (1st Cir. 2018) (quoting Kucana, 558 U.S. at 247); see also Mata v. Lynch, 576 U.S. 143, 146–47 (2015) (holding that courts have jurisdiction to review the BIA's refusal to exercise its sua sponte power to reopen cases).

facts" is a "mixed question of law and fact" that is reviewable under § 1252(a)(2)(D).  601 U.S. at 212; see also Guerrero-Lasprilla, 589 U.S. at 225 (similar).  The noncitizen in Wilkinson was seeking discretionary cancellation of removal under § 1229b(b).  601 U.S. at 213.  The Court's holding meant that he would be able to obtain judicial review of the agency's determination that the facts of his case failed to satisfy the hardship standard.  Id. at 215-16, 225.  But the Supreme Court emphasized that the facts underlying the agency's determination remained unreviewable.  Id. at 225 (first citing Guerrero-Lasprilla, 589 U.S. at 234-35; then citing Patel, 596 U.S. at 339).

**B.**

While we previously have acknowledged that whether jurisdiction exists under § 1252(a)(2) can sometimes be ambiguous, see Tacuri-Tacuri v. Garland, 998 F.3d 466, 472 (1st Cir. 2021), it is clear that our cases which predate Patel and Wilkinson must now be read in light of those decisions, see United States v. Rodríguez, 527 F.3d 221, 225 (1st Cir. 2008).  Thus, to the extent that we previously may have characterized the agency's hardship determination as an unreviewable "factual inquiry," see Tacuri-Tacuri, 998 F.3d at 471 (citing Alvarado v. Holder, 743 F.3d 271, 275 (1st Cir. 2014)), those holdings have been abrogated.  Wilkinson instructs instead that "the application of the exceptional and extremely unusual hardship standard to a given set

of facts is reviewable as a question of law under § 1252(a)(2)(D)." 601 U.S. at 217.

Where do we look for that given set of established facts? Figueroa seemingly would have us take account of anything that he testified to in the proceeding before the IJ. For instance, he urges us to consider that he would "suffer[] from . . . difficulty getting medical care in El Salvador." But while Figueroa did testify that "[t]here's a lot of poverty over there so it would be very, very, very difficult" to receive treatment for his various ailments if removed, the IJ made no factual finding regarding the likelihood of Figueroa being able to obtain his medicine in El Salvador. In essence then, Figueroa is asking that we take his testimony as true despite the lack of a finding by the IJ that it was. "A reviewing court is not bound, however, to accept a petitioner's statements as fact whenever an IJ simply has not made an express adverse credibility determination." Kho v. Keisler, 505 F.3d 50, 56 (1st Cir. 2007); see also Garland v. Ming Dai, 593 U.S. 357, 364, 372–73 (2021).

Figueroa otherwise maintains that he takes no issue with the facts as found by the agency.⁶ We thus confine our analysis

---

⁶ Despite this insistence, Figueroa at times appears to ask us to adopt facts that are directly contrary to the factual findings of the agency. For example, Figueroa claims that "there is no support system for [Maria] in the USA." But the IJ found that Maria managed to pay her bills in part by relying on her family when Figueroa was out of work for six months. Under Patel,

to those factual findings.[7]

### III.

Assured of our jurisdiction and equipped with the agency's factual findings, we turn to the issue of whether the agency erred in concluding that Figueroa failed to establish that his removal would result in "exceptional and extremely unusual hardship" to either himself or Maria.  Where, as here, "the BIA adopts the IJ's decision but adds its own gloss, we 'review the decisions of both the BIA and the IJ' together." Espinoza-Ochoa v. Garland, 89 F.4th 222, 230 (1st Cir. 2023) (quoting Aldana-Ramos v. Holder, 757 F.3d 9, 14 (1st Cir. 2014)).  Our review is deferential.  See Wilkinson, 601 U.S. at 225 ("Because this mixed question is primarily factual, . . . review is deferential.").[8]

Figueroa's contention is that the agency "erred . . . in the application of the seminal cases on exceptional and extremely unusual hardship."  Although he counts both BIA precedent and decisions of the courts of appeal among those cases, he makes no

---

we have no jurisdiction to review that factual finding.  596 U.S. at 331.

[7] We save for another day the question of whether, consistent with § 1252(a)(2)(B) and Patel, a reviewing court may consider historical facts from the administrative record even if they are not expressly included in the agency's factual findings.

[8] We need not decide here precisely what deferential standard of review should govern because we reach the same conclusion regardless.  See Singh v. Rosen, 984 F.3d 1142, 1154 (6th Cir. 2021) (considering various deferential standards of review).

effort to develop any argument based on the latter. We thus consider only Figueroa's argument that the BIA misapplied its own precedent to his case.⁹ See Mendez-Barrera v. Holder, 602 F.3d 21, 26 (1st Cir. 2010) ("An administrative agency must respect its own precedent, and cannot change it arbitrarily and without explanation, from case to case."); United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.").

Figueroa focuses on Maria. He argues that his removal would subject her to the requisite hardship because she is dependent on him for financial and emotional support. But "it has long been settled that economic detriment alone is insufficient to support even a finding of extreme hardship," Andazola-Rivas, 23 I. & N. Dec. at 323, let alone exceptional and extremely unusual hardship. And Figueroa offers nothing in response to the IJ's observation that "[w]hen [Figueroa] was out of work for six months[,] his wife managed with her income, income generated by [their] properties, and help from her family." With respect to

---

⁹ The government does not dispute that these precedents apply even though they involve the hardship standard under 8 U.S.C. § 1229b rather than under NACARA. We note, however, that the two inquiries differ in at least one respect: under NACARA, hardship to the noncitizen personally is considered, see 111 Stat. at 2198-99; 8 C.F.R. § 1240.66(c)(4), whereas under § 1229b, only hardship to the noncitizen's qualifying relatives is considered, see 8 U.S.C. § 1229b(b)(1)(D).

emotional support too, Figueroa has failed to establish that the agency erred in concluding that this hardship would not be "substantially beyond the ordinary hardship that would be expected when a close family member leaves this country." Monreal-Aguinaga, 23 I. & N. Dec. at 62 (internal quotations omitted).

Figueroa also argues that the agency erred in concluding that removal would not pose an exceptional and extremely unusual hardship to him personally.  He primarily takes issue with the weight that the agency assigned to his concerns for his own safety in El Salvador, particularly because his cousin was killed within three months of being removed there from the United States in 2017.  The BIA has said, however, that "adverse country conditions in the country of return are [a] factor[] to consider . . . but generally will be insufficient in themselves to support a finding of exceptional and extremely unusual hardship." Id. at 63-64.  Here, Figueroa points to no facts that lead us to find error in the agency's conclusion that the regrettable death of his cousin does not demonstrate that he will face exceptional and extremely unusual hardship if removed.

Figueroa's remaining arguments regarding the hardship standard as applied to him are equally unavailing.  He highlights his testimony on what he fears will befall him if removed to El Salvador, but as we have already explained, we cannot take Figueroa's testimony as conclusive as to the likelihood of future

- 14 -

events in these circumstances.  See Kho, 505 F.3d at 56; Ming Dai, 593 U.S. at 364, 372-73.  In any event, Figueroa offers no response to the BIA's observation that he had "not met his burden of proving he . . . would be unable to secure employment or provide for [his] own basic needs" upon removal.  Figueroa's case thus stands in contrast to Gonzalez Recinas, in which the BIA found the hardship standard satisfied by a "close margin" for four children whose single mother faced removal to Mexico, where she had no close family and would be solely responsible for the four children and their two siblings.  23 I. & N. Dec. at 471.

Finally, Figueroa calls attention to the more than three decades that he has spent in the United States.  While we recognize the length of his residency in this country, we also note that it does not particularly distinguish Figueroa from other applicants for the relief he seeks, as special rule cancellation of removal under NACARA is generally available only to those who entered the country before the early 1990s.  See 8 C.F.R. § 1240.61(a).  Similarly, Monreal-Aguinaga, in which the BIA ordered the removal of a noncitizen who had been in this country for more than twenty years, see 23 I. & N. Dec. at 57, underscores that the passage of time will not always guarantee a noncitizen relief.

**\*\*\***

The petition for review is denied.